IRELL & MANELLA LLP
Robert M. Schwartz (117166)
   (rschwartz@irell.com)
Victor Jih (186515)
   (vjih@irell.com)
Charles Elder (186524)
   (celder@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:   (310) 203-7199

Attorneys for Plaintiff
GDC Technology Limited

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GDC TECHNOLOGY LIMITED,<br><br>              Plaintiff,<br><br>      v.<br><br>DOLBY LABORATORIES, INC.,<br><br>              Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1.  INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br><br>**2.  INTENTIONAL INTERFERENCE PROSPECTIVE ECONOMIC RELATIONS**<br><br>**3.  UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200** *et seq.*<br><br>**4.  DECLARATORY JUDGMENT OF INVALIDITY OF COPYRIGHT AND OTHER INTELLECTUAL PROPERTY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff GDC Technology Limited ("GDC") hereby alleges the following against defendant Dolby Laboratories, Inc. ("Dolby"):

## Jurisdiction & Venue

1.      This action arises under the Copyright Laws of the United States of America, 17 U.S.C. Section 101 *et seq*., and the Declaratory Judgment Act, 28 U.S.C. Sections 2201 and 2202.  This Court has subject matter jurisdiction over the declaratory relief action under 28 U.S.C. Section 1331 and Section 1338(a) based upon the existence of an actual controversy between GDC, on the one hand, and Dolby, on the other, regarding Dolby's claim to a copyright in its digital cinema interoperability codes and related information, and Dolby's unlawful interference with GDC's business based on Dolby's false claim concerning such copyright.  This Court has subject matter jurisdiction over the state-law tort claims pursuant to 28 U.S.C. Sections 1338(b) and 1367.

2.      This Court possesses personal jurisdiction over Dolby pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Cal. Civ. Code Section 410.10 because Dolby   conducts its digital cinema business in this District, in Burbank, California.

3.      Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(1) because Dolby resides in this District and is subject to the court's general personal jurisdiction.

## Nature of the Action

4.      Plaintiff GDC brings this lawsuit to stop Dolby from using unlawful methods to interfere with fair competition in the digital cinema industry.  GDC and Dolby are competitors.  Unfortunately, Dolby has concluded that it cannot compete against GDC on the basis of Dolby's technology, customer service, or price.  Faced with that reality, Dolby has had to resort to unlawful methods.  GDC has recently learned that Dolby has been telling GDC's existing and potential customers that GDC's digital cinema products will not interoperate with Dolby's products and that

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

COMPLAINT

GDC's customers and GDC are violating Dolby's supposed copyright and other intellectual property rights by interconnecting Dolby's products to GDC's products.

5.      As detailed below, Dolby's statements are false, and Dolby knows that what it is telling GDC's customers is false.  GDC brings this lawsuit to recover damages caused by Dolby's misconduct and to obtain injunctive relief to stop Dolby from misleading GDC's customers and interfering with GDC's existing and future business relationships.  GDC also seeks a judicial declaration that Dolby has no valid copyright or other intellectual property right in the information it seeks to monopolize, and that, even if there exists copyright or other protection in that information, GDC is engaged in fair use or other lawful conduct in using it to enable its products and Dolby's products to function together.

6.      GDC is one of the world's largest sellers and servicers of software and hardware to theater owners that have converted from the use of physical film prints to entirely digital systems.  GDC's servers have been installed to run on approximately 40,000 screens worldwide, including about 13,000 in the United States.  GDC's TMS software has been installed to run approximately 17,000 screens worldwide, including about 7,000 in the United States.

7.      A digital cinema system consists of four basic components: (a) a media server, which stores the video and audio content of the motion picture to be exhibited and "plays" those files when instructed, (b) a sound processor, which receives the audio signal from the server when the motion picture is being shown to the audience and relays it to amplifiers and speakers, (c) a digital projector, which converts the video signal received from the server into an image on the theater's screen, and (d) a piece of software residing on a computer that coordinates the functions of each of those three physical devices and other equipment.  Within the industry, that software is called a "Theater Management System" or "TMS."

8.      To communicate with a media server, the TMS software sends messages and commands, such as a command to instruct the media server to begin

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 3 -

COMPLAINT

playing a given motion picture at a given time. These messages and commands typically take the form of a four-digit hexadecimal (two byte) code, embedded in a larger message header that tells the server that it is about to receive a message. These interoperability codes are at the heart of this lawsuit.

9.     Plaintiff GDC sells GDC-branded media servers. It also sells its own TMS software. Dolby sells media servers, sound processors, and TMS software. There are other competitors in the industry. Some sell projectors. Some sell media servers. Some sell TMS software. Some sell a combination of these. For a digital theater system to function, each component must be able to communicate with the others.

10.     The participants in this industry, including Dolby, know that. They have never attempted to maintain secrecy or a proprietary interest in this information. Nor could they. There is nothing secret about these interoperability codes. For years market participants, including GDC and Dolby, have readily shared their interoperability codes and related information with one another.[1] Even without such overt disclosure of this information, using basic computer hardware, one can easily determine the codes by reading the data transmissions between TMS software and a media server.

11.     Were the market participants to not share this information, they would make it more difficult to sell their products to theater owners, whose needs may be

---

[1] This package of information is sometimes called an "API." However, it should not be confused with the term "API" where used in other contexts to refer to computer code that functions as an interface between two other pieces of software. The digital cinema interoperability codes and message header information at issue here are *not* computer code. They are typically embodied in the form of a booklet that describes the functions of each available message and command for the operation of a particular piece of digital cinema hardware. Collectively, this information is often titled and referred to as a "protocol." Someone wishing to sell TMS software writes their own computer code to perform the functions described in the protocol and to operate the piece of hardware at issue, such as a media server. Among many other things, this code sends a message to the media server, containing the relevant interoperability code, when needed for the operation of the cinema system.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 4 -

8485560

COMPLAINT

better served by buying the four basic digital cinema components from different manufacturers and sellers, or in different combinations.

12.     To that end, for years Dolby has provided the protocols, including the interoperability codes, for its products to its competitors, including GDC.  And Dolby has never taken the position that any of this information constituted any form of intellectual property that it could or that it desired to control.  For example, in 2011, when GDC asked Dolby to send GDC the latest Dolby media server protocols, which included the interoperability codes, Dolby provided them enthusiastically, even rebuffing the notion that any "license," "NDA" (non-disclosure agreement), or other "legal documents" were necessary.  Why not?  Because, in Dolby's own words, "We are happy to see our server become a component of as many [digital cinema] solutions as possible."

13.     Similarly, GDC has provided the protocols, including its interoperability codes, to Dolby and to GDC's other competitors.  As a result of this technical cooperation, sellers of TMS software have used the interoperability codes of Dolby, GDC, and others to enable their software to control the hardware, such as the media servers, sold by their competitors, including GDC and Dolby.

14.     The cooperative relationship between GDC and Dolby began to change, however, after Dolby bought another media server manufacturer, Doremi, in October 2014.  Dolby now sells the Doremi media servers under the Dolby nameplate.  Although Dolby has continued to share its interconnection protocols, including interconnection codes, with every other member of the digital cinema industry, it has recently singled out GDC and decided that it would no longer do so.

15.     Dolby has two reasons for discriminating against GDC and attempting to stymie GDC's ability to compete against Dolby in the digital cinema business.

16.     First, GDC is by far Dolby's primary competitor for media servers.  No other seller poses the same competitive threat.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 5 -

COMPLAINT

17.     Second, Dolby is seeking to enhance its prospects in another aspect of the digital cinema business: sound processing.  In 2012, Dolby introduced a theater sound processing system called "Atmos."  Dolby claims that its Atmos sound system provides an improved audio experience for theater-goers.  But in selling its Atmos system to theater owners, Dolby has to compete against others.  One competitor is Digital Theater Systems, also known as DTS.  Dolby's competitive prospects dimmed in April 2015, when DTS announced a new and superior immersive sound processing technology, called "DTS:X."  GDC is licensed to use the DTS:X technology on its servers.  GDC is the only media server capable of playing motion pictures with the DTS:X immersive soundtrack; not even Dolby can offer servers capable of doing that.  In addition, a theater owner wishing to use the Dolby Atmos sound system has to purchase additional hardware, including an expensive external sound processor (the Dolby CP850 cinema sound processor) to enable Dolby's Atmos soundtrack to be heard.  In contrast, a theater owner wishing to offer the DTS:X immersive sound experience to its customers does not need to buy any such additional or expensive sound processing hardware.

18.     To protect Dolby's investment in its Atmos sound system, defend its clumsy and expensive set-up, and to compel theater owners to use Dolby's sound system instead of DTS's sound system, Dolby is using its claimed intellectual property right in the interoperability codes to pressure GDC's customers to not use GDC servers.  Dolby wants them to use Dolby servers, or others' servers that use Dolby's Atmos system.

19.     In pursuit of these ends, Dolby could design, price, and service products and technologies that are superior to those offered by GDC.  But Dolby has failed to do so.  As a result, Dolby has had to resort to telling GDC's current and potential customers that GDC's products are not compatible with Dolby's products and that by interconnecting them, Dolby's intellectual property rights are being violated.  To that end, on April 8, 2016, and for the first time in the many years that

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 6 -

COMPLAINT

these companies have been making available to one another their protocols and interconnection codes, Dolby notified GDC in writing that its protocols and interconnection codes are subject to copyright and other unspecified intellectual property rights. Further, Dolby demanded that GDC refrain from telling GDC's customers that GDC has the right to use Dolby's interconnection codes.

20.    GDC is informed and believes that Dolby knows that these assertions, and its similar statements to GDC's customers, are false: Dolby knows that GDC's products are compatible with those that Dolby sells. Dolby knows, for example, that GDC's software is able to control Dolby's digital cinema hardware.

21.    GDC is informed and believes that Dolby also knows that the interoperability codes that permit Dolby's products to interoperate with GDC's products—and with the products sold by every other competitor in the digital cinema industry—are not protectable forms of intellectual property, whether under copyright law or otherwise. A search of the U.S. Copyright office reveals that Dolby has registered dozens of digital cinema-related works for copyright protection. The claimed intellectual property Dolby has told GDC's customers that they and GDC are infringing is nowhere to be found within those registrations. And in its April 8, 2016, letter to GDC, Dolby admitted that it has not previously sought copyright registration for those codes or their related information.

22.    GDC is informed and believes that Dolby also knows that, even if these interoperability codes and related information were protectable as a matter of copyright or other law, GDC is engaged in fair use and its conduct is otherwise lawful. GDC writes its own software code for the GDC TMS. The only element of Dolby's protocol that GDC uses is the set of messages/commands and corresponding hexadecimal interoperability codes. Dolby allows every other participant in the industry to use this information. Dolby has never asked GDC, and GDC is informed and believes that Dolby has never asked any other industry participant, to sign a license or any other form of grant or permission to use that

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 7 -

COMPLAINT

1  information in the products of Dolby's competitors.  To the contrary, and as quoted

2  above, Dolby has informed GDC (and presumably others who have made the same

3  requests) that no license, NDA, or other legal document is necessary to access and

4  use this information.

5       23.     In light of Dolby's false and disruptive communications to GDC's

6  existing and potential customers, and the assertions in Dolby's April 8, 2016, letter,

7  GDC has no choice but to seek judicial relief through this action.

8                         **The Parties**

9       24.     Plaintiff GDC Technology Limited is a British Virgin Island

10  corporation with its principal place of business at 39 Healthy Street East, Unit 1–7,

11  20th Floor, Kodak House II, North Point, Hong Kong.  GDC is a leading global

12  digital cinema solutions provider, with the second largest installed base of digital

13  media servers globally and the largest installed base in the Asia-Pacific region.  In

14  addition to selling digital media servers, GDC sells TMS software.  GDC's TMS

15  software interfaces with media servers produced both by GDC and other companies.

16  GDC conducts business in California through offices located in this District.

17       25.     Defendant Dolby is a Delaware corporation with its corporate

18  headquarters located at 1275 Market Street, San Francisco, California 94103 and its

19  digital cinema business operations located in this District at 3601 West Alameda

20  Avenue, Burbank, California 91505.  Doremi Labs, located in this District at 1020

21  Chestnut Street, Burbank, California 91505 became a wholly-owned subsidiary of

22  Dolby in 2014.  Its digital cinema products, including media server and TMS

23  software, are sold under the Dolby nameplate.  Its officers and employees have

24  engaged in the conduct at issue in this case.

25          **Allegations Common To All Claims For Relief**

26       26.     At its core, this is a dispute over whether Dolby has a right to claim

27  that various four-digit hexadecimal interoperability codes used to issue commands

28  to computer hardware merit copyright or other intellectual property protection, and,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 8 -

COMPLAINT

even if so, whether Dolby can tell GDC's customers that GDC's use of those codes is unlawful.  To understand how these interoperability codes function, it is first necessary to delve into the mechanics of digital cinema systems.

**Digital Cinema, TMS, and Interoperability Codes**

27.     Digital cinema systems are most easily explained via analogy to a comparable entertainment system: the typical home theater.  Like a digital cinema system, a home theater may consist of hardware purchased from several different manufacturers.  Generally, each piece of hardware—whether it be a television screen, a sound system, a DVR, a set-top box, or something else—comes with its own remote control and instruction manual dictating how to use the hardware.  The result is that the user can be overwhelmed by myriad remotes and instructions, unable to efficiently synchronize these systems and enjoy a painless viewing experience.

28.     To combat that problem, many consumers purchase universal remotes, or program one remote (such as the one supplied with their set-top box) to operate all of the hardware.  As their name suggests, these remotes are designed such that they can operate with every piece of hardware, no matter the model or make.  That is, they enable the user to control the entire home theater using a single interface— the remote itself.

29.     Manufacturers, however, cannot make functional universal remotes in a vacuum.  Although they can design a remote control capable of sending the Infra-Red ("IR") pulses needed to execute numerous functions of the hardware, the remote cannot communicate with a piece of hardware unless it knows some of that hardware's "vocabulary."  Thus, a universal remote manufactured by Company B can only tell a Company A television set to turn on the power if it knows the specific word or command associated with that function.

30.     In that regard, TMS software is akin to the universal remote for digital cinema.  One of the four main components of any digital cinema system, TMS

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 9 -

8485560

COMPLAINT

software allows cinema exhibitors to govern and control—via one interface—the other three primary components that comprise a modern digital cinema system: (a) a media server, which stores the video and audio content of a motion picture and "plays" those files when instructed; (b) a sound processor, which receives the audio signal from the server when the motion picture is being shown to the audience; and (c) a digital projector, which converts the video signal received from the server into an image on the theater's screen.

31.     However, like a universal remote, TMS software cannot communicate with a given piece of hardware unless it knows that hardware's vocabulary—or messages and commands—for particular functions.  A Dolby media server's commands generally consist of four-digit hexadecimal (two byte) interoperability codes.  To illustrate, the hexadecimal digits "A1B2" could be used as a Dolby media server command tell the media server to begin playback of the motion picture.

32.     Historically, GDC, Dolby, and other media server manufacturers have freely shared these interoperability codes, presumably on the understanding that the more TMS software that can run their hardware, the more versatile—and thus attractive—the hardware is to digital cinema exhibitors.  And for years, TMS software developers have employed these interoperability codes to ensure that their software can function in any digital cinema system.  Indeed, Dolby and GDC have previously exchanged interoperability codes.

33.     Additionally, Dolby and GDC neither made any claim to intellectual property rights in these interoperability codes, nor sought to license the use of these interoperability codes.

34.     Notably, the only information of Dolby—or any other company—that GDC's TMS software uses are these interoperability codes and associated messages and commands.  That is industry practice.  Like its other competitors, GDC writes its own code for the TMS software itself.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 10 -

COMPLAINT

**Doremi Interoperability Codes**

35.     For years, Doremi has shared its interoperability codes and related information with manufacturers and other participants in the digital cinema industry. GDC has used the Doremi interoperability codes and related information to enable its TMS software to interface with Doremi's media servers.

36.     Until recently, GDC's use of Doremi's interoperability codes has been a non-event, as demonstrated by Doremi's lack of any reaction or response.  Doremi has known that many TMS software providers have been using the Doremi interoperability codes to ensure that their TMS software could interface with Doremi's media servers.  GDC is unaware of any efforts by Doremi to interfere with this use; presumably Doremi did not believe that it had legal grounds to do so.

**Dolby Acquires Doremi in October 2014**

37.     Dolby and GDC have had an amicable relationship for years.  As noted above, Dolby provided GDC with the interoperability codes necessary for GDC's TMS software to communicate with Dolby's digital cinema servers.

38.     On information and belief, this relationship changed in late 2014, when Dolby acquired Doremi Labs.  This purchase represented an intensification of Dolby's efforts to dominate the digital media server market and the market for a new generation of theater sound processing, known as "immersive sound."  At that point, Dolby began selling Doremi media servers under the Dolby nameplate and used Doremi's interoperability codes to control those servers.  And Dolby has refused to support the DTS:X sound format in its digital cinema products.

39.     Around the same time that Dolby was bolstering its media server offerings, GDC sought to expand its audio offerings.  To that effect, GDC announced in April 2015 that it was the licensee for DTS:X, the new immersive sound processing technology developed by DTS.  Just as GDC competed with Dolby in the TMS and media server market, DTS competed with Dolby in the sound processing technology market.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 11 -

COMPLAINT

40.    Thus, by mid-2015, Dolby faced a dilemma.  Its major competitor in the media server market was now offering cinema exhibitors an alternative to Dolby's own sound processing technology—Dolby Atmos.  Accordingly, to preserve its server market share, Dolby had to stifle GDC's ascendance.

41.    Generally, when confronted in the marketplace by a superior product, companies seek to generate a competitive edge by developing new technology, improving product performance, offering improved customer service, or simply by dropping the price of extant products.

42.    Dolby apparently did not believe these to be viable options to continue competing with GDC.  Instead of focusing on its own offerings, Dolby sought to attack the GDC alternatives.

43.    This effort began with a campaign to dissuade cinema exhibitors from using GDC's TMS software to control Dolby digital media servers.  GDC is informed and believes that, in late 2015, Dolby began contacting digital cinema exhibitors with whom it knew GDC currently had contractual relationships or with whom it believed GDC would soon enter into contractual relationships (collectively, "GDC customers") to provide GDC TMS software that could interface with a variety of digital cinema system products, including Dolby's.

44.    GDC is informed and believes that, although Dolby knew that its interoperability codes and related information were not protectable under U.S. copyright law (or any other U.S. intellectual property regime), it nonetheless falsely represented to GDC customers that GDC's use of these codes and information violated Dolby's intellectual property rights.

45.    For example, in a March 19, 2016 letter one of GDC's customers, PVR Pictures, one of the largest theater operators in the world, Mike Archer, a Dolby executive and former Vice President of Digital Cinema Sales at Doremi, wrote:

It was brought to my attention that PVR has decided to deploy the GDC TMS to control Dolby/Doremi servers.  I feel I am obligated

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

COMPLAINT

1    to inform you that we have authorized the use inside of China, but

2    GDC is not authorized to use their TMS to control our servers outside

3    of China.

4        Being a public company like Dolby, I'm sure you can appreciate

5    our concern when other companies choose to honor our request as it

6    relates to our IP.

7    46.    This letter had its intended effect. Dolby immediately plunged GDC's

8    relationship with PVR into turmoil, jeopardizing GDC's extant contractual relations.

9    By knowingly invoking baseless infringement claims, Dolby has damaged and

10   continues to damage GDC's current and future contractual relationships via unfair

11   business methods.

12   47.    In addition to telling GDC's customers (and, by necessity, Dolby's own

13   customers) that using GDC TMS to control Dolby servers violates Dolby's

14   intellectual property rights, GDC is informed and believes that Dolby falsely has

15   represented to GDC's customers that GDC's products are not compatible with

16   Dolby's products, including Dolby media servers.

17   48.    As stated above, Dolby also communicated with industry participants

18   with whom Dolby expected GDC to conduct future business. Dolby told such

19   potential GDC customers that GDC's TMS software was not authorized to operate

20   Dolby media servers (implying that Dolby's authorization was necessary because

21   the information needed to interoperate the products constituted Dolby's intellectual

22   property), that using the TMS software to operate Dolby's media servers would

23   violate Dolby's legal rights, and that such potential purchasers should not buy

24   GDC's products. Believing Dolby's representations to be true, these potential GDC

25   customers refrained from purchasing GDC's TMS software.

26   49.    In an effort to resolve dispute informally, GDC wrote Dolby on March

27   23, 2016, and stated that Dolby's interoperability codes were not copyrightable and

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 13 -

COMPLAINT

that therefore GDC's use of these interoperability codes did not constitute infringement.  GDC invited further discussion to avoid a dispute.

50.    Dolby was not interested.  It responded on April 8, 2016 with a cease and desist letter from its outside litigation counsel.  In that letter, Dolby rejected GDC's position, and maintained both that it held a valid copyright in its interoperability codes and that "any offer, sale or other dissemination by GDC of any product that incorporates or uses in any way Dolby's [Protocol] absent express written authorization or license from Dolby," constituted copyright infringement. Dolby additionally "demand[ed] that GDC cease any communication with any third party" stating that GDC may lawfully use Dolby's interoperability codes.

51.    Dolby knows that many other TMS manufacturers currently use Dolby's interoperability codes.  Yet Dolby has taken no action against those manufacturers.

52.    Dolby has never approached GDC with respect to licensing Dolby's interoperability codes, and GDC is informed and believes that Dolby has not entered into a licensing agreement with any TMS software manufacturer to authorize that manufacturer to use Dolby's alleged property.

## First Claim for Relief:

## Intentional Interference With Contract

53.    GDC incorporates by reference the allegations in paragraphs 1 through 52 above, as if set forth fully herein.

54.    GDC possesses valid contracts with various digital cinema exhibitors, including PVR Cinemas, to provide and service TMS software capable of operating with a wide variety of media servers, including Dolby's media servers.

55.    Dolby is and, at all material times, has been aware of the existence of these contracts.  Indeed, it could not have written the offending letters were it unaware of these relationships.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 14 -

COMPLAINT

56.     Dolby engaged in conduct that was calculated to disrupt GDC's rights under those contracts and to make performance under those contracts more difficult, and achieved those ends.  In doing so, Dolby has prevented GDC from realizing the benefits of these contractual relationships.  To achieve those ends, Dolby has, among other things, contacted GDC's customers and falsely stated that the use of GDC's TMS software to control Dolby media servers violates Dolby's intellectual property rights.

57.     GDC has been damaged as a result of Dolby's intentional interference with GDC's contracts in an amount to be proven at trial, including, but not limited to, the profits GDC would have made but for Dolby's interference.

58.     Dolby's acts were undertaken intentionally and in conscious disregard of GDC's rights.  In addition, Dolby's acts were malicious, oppressive, and/or fraudulent.  Therefore, GDC should be awarded punitive and exemplary damages sufficient to punish Dolby and to deter similar conduct in the future.

59.     Defendants' conduct indicates that it has no intention to stop harassing either GDC or GDC's customers—and, unless restrained, will not do so—to GDC's great and irreparable injury, for which damages would not afford adequate relief, in that they would not completely compensate for the injury to GDC's business reputation, goodwill, and integrity amongst the digital cinema exhibitors.

**<u>Second Claim for Relief:</u>**

**<u>Intentional Interference</u>**

**<u>With Prospective Economic Advantage</u>**

60.     GDC incorporates by reference the allegations in paragraphs 1 through 52 as set forth fully herein.

61.     Before Dolby's 2016 letter-writing campaign, GDC was actively developing business relationships to provide TMS software and servers to digital cinema exhibitors and manufacturers.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

62.     Dolby is and, at all material times, has been aware of the existence of GDC's prospective contractual relationships.  Dolby could not have sent GDC's customers the kinds of communications that it has been sending were it unaware of these prospective contractual relationships.

63.     GDC is informed and believes that Dolby falsely represented to potential GDC customers that Dolby held property rights in its interoperability codes and related information even though Dolby knew that it did not possess any legitimate intellectual property rights in that information.  GDC is also informed and believes that Dolby falsely represented to these digital cinema exhibitors and manufacturers that GDC's TMS software was not interoperable with Dolby's products.

64.     Dolby's representations were calculated to disrupt GDC's ongoing business negotiations with prospective customers.  Dolby contacted potential GDC customers with the intent to induce them to sever their business relationships with GDC and ensure that they did not enter into contracts to purchase GDC's TMS software.

65.     Dolby's false representations as alleged above were wrongful, constituting, among other things, an unfair business practice in violation of California Business & Professions Code Section 17200 *et seq*.

66.     GDC is informed and believes that, because of Dolby's false representations to potential GDC customers, those customers severed their business relationships with GDC.

67.     As a result of Dolby's intentional interference with GDC's prospective economic advantage, GDC suffered damages in an amount to be proven at trial. Because of Dolby's intentional acts, GDC will not realize the profits (and the concomitant value of further developing the customer relationships with which Dolby's conduct has interfered) from these prospective business relationships that it would have realized, but for Dolby's conduct described herein.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 16 -

COMPLAINT

68.     Dolby's acts were undertaken intentionally and in conscious disregard of GDC's rights to compete fairly in the marketplace.  In addition, Dolby's acts were malicious, oppressive, and/or fraudulent.  Therefore, GDC should be awarded punitive and exemplary damages sufficient to punish Dolby and to deter similar conduct in the future.

69.     Defendants' conduct indicates that it has no intention to stop harassing either GDC or GDC's potential customers—and, unless restrained, will not do so—to GDC's great and irreparable injury, for which damages would not afford adequate relief, in that they would not completely compensate for the injury to GDC's business reputation, goodwill, and integrity amongst digital cinema exhibitors and manufacturers.

### Third Claim For Relief:
### Unfair Competition
### Under Cal. Bus. & Prof. Code § 17200 *et seq.*

70.     GDC incorporates by reference the allegations in paragraphs 1 through 52 as set forth fully herein.

71.     GDC is informed and believes that, beginning in late 2015, Dolby began contacting GDC's current and potential customers, informing that that the use of GDC's TMS software to control Dolby's media servers violated Dolby's intellectual property rights.  GDC is additionally informed and believes that Dolby represented that GDC's TMS software was incompatible with Dolby's media servers.

72.     GDC is informed and believes Dolby's representations were false, and that Dolby knew they were false when it made them.  Dolby nonetheless made these untruthful representations in an effort to unfairly compete with GDC.

73.     As a direct, proximate, and foreseeable result of Dolby's wrongful conduct, GDC's relations with both its current customers and potential future customers have been damaged, injuring GDC.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 17 -

COMPLAINT

74.     In a March 23, 2016 letter to Dolby, GDC expressed its concern that Dolby's communications to GDC customers regarding the use of GDC's products, and their compatibility with Dolby's products, were not correct.  Dolby responded on April 8, 2016, by stating that Dolby's letters had been truthful.  In the same letter, Dolby demanded that GDC cease communicating informing to its customers on these matters even though that information is, in fact, truthful.

75.     Dolby's actions hereinabove alleged are acts of unfair competition within the meaning of Business and Professions Code Section 17203.  GDC is informed and believes that Dolby will continue to make false representations to GDC's customers unless and until the court orders GDC to cease and desist.

**Fourth Claim For Relief:**

**Declaratory Judgment**

**Concerning Dolby's Claimed Intellectual Property**

76.     GDC incorporates by reference the allegations in paragraphs 1 through 52 as set forth fully herein.

77.     To control the operation of Dolby's media servers, GDC's TMS software uses various Dolby's interoperability codes, as well as the associated messages, commands, and other related information (collectively, "Dolby's Alleged Property").

78.     Dolby has written letters to GDC's customers stating that using GDC's TMS software to control Dolby media servers outside of China violates Dolby's intellectual property rights in the interoperability codes and other elements of Dolby's Alleged Property.

79.     Dolby has written to GDC, asserting that Dolby possesses the copyright in the interoperability codes and other elements of Dolby's Alleged Property. Dolby's letter suggests the possibility that Dolby's Alleged Property may constitute some other form of intellectual property, such as a trade secret.  In the same letter, Dolby noted that GDC does not have a license to use the interoperability codes, and

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 18 -

COMPLAINT

that "any unauthorized or unlicensed use or dissemination of Dolby's [interoperability codes] by GDC would constitute an infringement of Dolby's rights."

80.     Dolby has also "demand[ed] that GDC cease any communication with any third party that GDC does have a right" to use Dolby's Alleged Property.

81.     Contrary to Dolby's assertions, the four-digit hexadecimal (two byte) interoperability codes, as well as the other elements of Dolby's Alleged Property, are not subject to copyright protection or any other form of intellectual property, such as a trade secret.  Among other reasons, the foregoing do not possess the requisite modicum of creativity, are functional, and represent the merger of idea and expression. And Dolby has publicly disclosed the information contained in its Alleged Property, thereby stripping it of any trade secret protection.

82.     Even if Dolby's Alleged Property is properly the subject of copyright or trade secret protection, GDC claims, and Dolby disputes, that GDC is engaged in fair use or other lawful conduct in GDC's use of Dolby's Alleged Property to enable GDC's TMS software to function with Dolby media servers.  Furthermore, Dolby is estopped from asserting copyright or trade secret claims based upon equitable doctrines of waiver and laches.  Dolby has not asserted its alleged copyright or trade secret claims against any other company despite knowledge of alleged infringement. Dolby has knowingly acquiesced as GDC and other companies used Dolby interoperability codes and other elements of its Alleged Property for years.

83.     Based on the foregoing, there exists an actual controversy between the parties over the following:

a.     whether the Dolby Alleged Property, including the interoperability codes, constitutes copyrightable subject matter;

b.     whether the Dolby Alleged Property, including the interoperability codes, constitutes any other form of protectable intellectual property, such as a trade secret;

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

c.      whether, even if the Dolby Alleged Property, including the interoperability codes, constitutes copyrightable subject matter, GDC's use violates any copyright therein or is subject to an affirmative defense; and,

d.      whether, even if the Dolby Alleged Property, including the interoperability codes, constitutes any other form of protectable intellectual property, such as a trade secret, GDC's use violates the rights therein or is subject to an affirmative defense.

## **Prayer for Relief**

WHEREFORE, GDC respectfully requests that this Honorable Court enter judgment in its favor and order the following relief:

## **On the First and Second Claims for Relief**

1.      For compensatory damages according to proof in an amount to be determined at trial;

2.      For an award of exemplary damages against Dolby sufficient to make an example of and punish Dolby for its willful misconduct as alleged herein;

## **On the First, Second, and Third Claims for Relief**

3.      For injunctive and other relief preventing Dolby from engaging in acts of interference with GDC's existing and future business relationships and acts of unfair competition;

## **On the Fourth Claim for Relief**

4.      For a judicial declaration that:

a.      The Dolby Alleged Property, including the interoperability codes, does not constitute copyrightable subject matter;

b.      The Dolby Alleged Property, including the interoperability codes, does not constitute any other form of protectable intellectual property, such as a trade secret;

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

1          c.      Even if the Dolby Alleged Property, including the

2                 interoperability codes, constitutes copyrightable subject matter,

3                 GDC's use does not violate any copyright therein or is subject to

4                 an affirmative defense, such as fair use, waiver, acquiescence, or

5                 laches; and,

6          d.      Even if the Dolby Alleged Property, including the

7                 interoperability codes, constitutes any other form of protectable

8                 intellectual property, such as a trade secret, GDC's use does not

9                 violate the rights therein or is subject to an affirmative defense.

## On All Claims for Relief

5.     For attorneys' fees and costs expended in the prosecution of this action to the full extent permitted by law; and

6.     For such other and further relief as the Court deems appropriate.

Dated:  April 11, 2016 _____

IRELL & MANELLA LLP
Robert M. Schwartz
Victor Jih
Charles Elder

By: _____

Robert M. Schwartz
Attorneys for Plaintiff
GDC Technology Limited

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

1

### **Demand For Jury Trial**

2

GDC hereby demands a jury trial on all issues properly triable to a jury.

3

4     Dated:  April 11, 2016   ⎯⎯⎯⎯⎯          IRELL & MANELLA LLP
                                               Robert M. Schwartz
5                                              Victor Jih
                                               Charles Elder
6

7                                              By:

8                                                 Robert M. Schwartz
                                                  Attorneys for Plaintiff
9                                                 GDC Technology Limited

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8485560

- 22 -
COMPLAINT